Harry I. SCHWIMMER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15460.

United States Court of Appeals
Eighth Circuit.

April 23, 1956.

Rehearing Denied May 21, 1956.

See also, 232 F.2d 866.

Harry I. Schwimmer, pro se (Morris A. Shenker, St. Louis, Mo., was on the brief), for appellant.

Murry L. Randall, Asst. U. S. Atty. (Harry Richards, U. S. Atty., St. Louis, Mo., with him on the brief), for appellee.

Before GARDNER, Chief Judge, JOHNSEN and VOGEL, Circuit Judges.

JOHNSEN, Circuit Judge.

This is an appeal from a denial by the District Court of motions to quash two subpoenas duces tecum issued in a grand jury investigation.

The grand jury, one in session at St. Louis, Missouri, had engaged in investigating tax evasions and official corruption in connection therewith. In the course of its proceedings, it desired to have produced before it the files, papers and records of an attorney, Harry I. Schwimmer, as a means of obtaining information regarding the tax affairs of Schwimmer's clients and his handling of their situations. Among the matters which it was endeavoring to probe was what, if anything, Schwimmer had done or caused to be done in official circles to effect the disposition of a previous tax difficulty of Irving Sachs, president of Shu-Stiles, Inc.

Schwimmer, a lawyer at Kansas City, Missouri, for many years, had closed his office a short time before, placed his files

in storage with the Dean Rubber Manufacturing Co., of North Kansas City, and gone to the Island of Puerto Rico. The things which he thus had stored were contained in four cardboard boxes and four filing-cabinet drawers.

A subpoena of unlimited scope first was issued to the Dean Rubber Manufacturing Co., requiring it to appear and produce before the grand jury "All books, records, files, log books, diaries, memoranda, correspondence, and other documents of Harry I. Schwimmer now on your premises or in your possession, custody or control."

Three days later, and before the time prescribed for such appearance and production, a second subpoena, of restricted reach, was issued to the Dean Rubber Manufacturing Co., requiring it to appear and produce before the grand jury, on the same date as that fixed by the first subpoena, "All books, records, files, log books, diaries, memoranda, correspondence, and other documents of Harry I. Schwimmer now on your premises or in your possession, custody or control relating to the affairs of or any matter, proceeding, investigation, or other representation of Irving Sachs, Shu-Stiles, Inc., Mrs. Laura Taylor, and related persons, corporations, and affairs in connection with which the said Harry I. Schwimmer acted and/or participated in any manner whatsoever during the period from on or about September 1, 1945 to date [a period of approximately 10 years],[1] together with all records during the same period recording or reflecting the receipts and disbursements of said Harry I. Schwimmer personally and of any firm or partnership óf which he was a member." Sachs and Mrs. Taylor, referred to in the subpoena, were both officers of Shu-Stiles, Inc.

When Schwimmer learned of the issuance of the subpoenas, he came back from Puerto Rico and filed a motion to quash each of them as constituting, on various grounds, an unreasonable search and seizure in violation of the Fourth Amendment. No claim of privilege against self-incrimination under the Fifth Amendment was, however, asserted by him.

The motions to quash were presented to and heard by the Court on the day that the Dean Rubber Manufacturing Co. was required to respond to the two subpoenas. That Company had brought in and deposited before the grand jury, at the appointed time, all the containers which Schwimmer had placed in storage with it, but the boxes and cabinet drawers were kept under seal by the Marshal until the Court had had an opportunity to consider Schwimmer's motions.

Among the objections made by Schwimmer to the subpoenas was that the forced production sought of his files was unreasonable, because a violation of the attorney-client privilege would be involved in the grand jury's examination of them.[2] From the showing made by the Government on the hearing, the Court held that a waiver had been made by Shu-Stiles, Inc., by Sachs, and by Mrs. Taylor as to any attorney-client privilege that might have existed in their favor, and that there was therefore no basis for Schwimmer to claim any sanctity as to his files in protection of a privilege in any of these three parties.

The Court, as has been indicated, ruled that both of the subpoenas were reasonable as against all of the objections raised by Schwimmer's motions, and that Schwimmer was not entitled to have either of them quashed. It incorporated a qualification, however, in its subsequently filed order, making appointment of a Master to take possession of the delivered boxes and cabinet; to make an examination of everything contained in them; to remove such documents as the Master should deem to be within the attorney-client privilege of any clients of Schwimmer other than Shu-Stiles, Inc., Sachs and Mrs. Taylor; to impound whatever documents he so found to be

---

1. The bracket insertion is ours.

2. The several objections urged to each subpoena will be considered later.

privileged and deliver them to the Court for holding until further order; and to turn over to the grand jury everything else in Schwimmer's files for examination and use by it in its proceedings.

It will be noted that the Court gave the Master the power of full and final judgment on what documents were subject to the attorney-client privilege, and that no opportunity or right was accorded Schwimmer to check or have reviewed by the Court such result as the Master might reach.

On the filing of a notice of appeal and the making of an application to us for a stay of the Court's order pending appeal, we stayed the operation of the order made as to the first subpoena and denied the request for a stay as to the second. This, in relation to the qualification contained in the Court's order, as set out above, left the situation where the Master was able to turn over to the grand jury Schwimmer's records of receipts and disbursements and everything in his files which the Master found to be connected with the affairs of Shu-Stiles, Inc., Sachs and Mrs. Taylor, either directly or as a matter of relationship on the part of any person or corporation to those affairs, except as the Master concluded that there had existed a personal attorney-client relationship between any such related person or corporation and Schwimmer, distinct from that involved as to Shu-Stiles, Inc., Sachs and Mrs. Taylor, and that some particular paper or papers came within the privilege of that separate relationship.

The matter is now before us for a review on the merits of the order made by the trial court, denying the motion to quash as to each of the two subpoenas.

■ The compelled production of one's private books and papers through a subpoena duces tecum, for use against him in a criminal proceeding, is, of course, as much within the guaranty of the Fourth Amendment against unreasonable searches and seizures as is a reaching of them by means of a warrant. Boyd v. United States, 116 U.S. 616, 622, 6 S.Ct. 524, 29 L.Ed. 746.

The term "criminal proceeding", within this rule, includes the investigation of a grand jury, since such a body is merely an adjunct or "appendage" of the court, and the things it does represent an incident or process in the part played by the judicial system in criminal law enforcement. 24 Am.Jur., Grand Juries, § 2.

■ Refusal of the District Court to quash, as an unreasonable search and seizure, a subpoena duces tecum issued in a grand jury investigation is a final or appealable order. Perlman v. United States, 247 U.S. 7, 12, 13, 38 S.Ct. 417, 62 L.Ed. 950.

■ Such a motion to quash is entitled to be made by the owner of books and papers, in relation to a grand jury investigation of him, as to a subpoena duces tecum issued against a third party, in whose possession the books and papers are, but who is merely a custodian, without personal right in the books and papers as such, and with constructive possession and control of them thus remaining in the owner. The law recognizes no distinction between constructive possession, with control, and physical possession, as a basis for a subpoena to compel production, so that such process directed to and served upon an owner, who is in constructive possession and control, is as legally capable of commanding the production of his books and papers as is one against a third party, who is in physical possession of them for him. The question of whether to issue a subpoena against the owner or against the third party thus ordinarily is in such a situation merely one of procedural choice and convenience. Substantively, each involves, except as to the task of appearing and making delivery, the same aspects of reach, deprivation and seizure-effect against the owner.

■ We are accordingly unable to see any merit in the argument made by the Government here that, since the books and papers physically were in the possession of the Dean Rubber Manufacturing Co. and the subpoenas involved were

issued against it, Schwimmer had no basis for claiming unreasonable search and seizure against him and so could not make a motion to quash on that ground. We think that Schwimmer legally had such possession, control and unrelinquished personal rights in the books and papers as not to enable the question of unreasonable search and seizure to be escaped through the mere procedural device of compelling a third-party naked possessor to produce and deliver them.

■ The constitutional safeguard against unreasonable searches and seizures is more than a reach at mechanics in process. It is concerned with intrinsic as well as extrinsic aspects, and its look is at reality, not theory, in respect to the whole of what is being done. In general terms, the test to be applied under it is whether the thing done or attempted to be done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation, when the immediate end sought is considered against the private right affected. But since, as emphasized, the question of reasonableness or unreasonableness in search is one of realistic and not theoretical approach, the test stated is of course merely a principle and not a rule, and so is of subjective value only, and not of objective force, in the making of specific appraisal.

■ In extrinsic aspect, a subpoena duces tecum may be so broad in its scope as to go substantially beyond the bounds of apparent relevance in relation to an immediate pursuit and so be unreasonable. Or it may be so onerous in its burden as to be out of proportion to the end sought. Hale v. Henkle, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 109 A.L.R. 1445. In intrinsic aspect, it may involve an improper intrusion into what is, in relation to the purpose of the investigation, purely private or privileged papers. These are, of course, only generalized examples.

■ Ordinarily, as a matter of both extrinsic and intrinsic aspect, the compelled production before a grand jury of all of one's books and papers en masse, where they constitute a substantial body, a variety of accumulation, or an extensive-period product, and the subpoena is without indication or limitation of any nature as to class of persons, or type of transaction, or extent of period, to which the production is intended to be related, will judicially impress as not constituting a reasonable search and seizure.[3] Cf. Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696; Consolidated Rendering Co. v. State of Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327. That impression tends naturally to be created in such a situation, as a matter of fundamental fairness, unless it is apparent that such an en masse production is not an attempt to obtain a sea for the conducting of a general fishing expedition or—in the language of Judge Learned Hand—to make possible "an exploratory investigation whose purposes and limits can be determined only as it proceeds." McMann v. Securities and Exchange Commission, supra, 87 F.2d at page 379.

In the present situation, the first subpoena covered "All books, records, files, log books, diaries, memoranda, correspondence, and other documents" of Schwimmer. It thus was as broad as it could possibly be made. What it sought to have produced en masse manifestly constituted in the situation a substantial body, a variety of accumulation, and an extensive-period product. The contents of four cardboard boxes and four cabinet drawers were involved. The books and papers related to various other clients and legal affairs than Schwimmer's representation of Shu-Stiles, Inc., and Sachs. And from the dates set out in the second subpoena by way of limitation, the files recognizedly covered at least a ten-year period of general legal practice.

The en masse production sought, as stated by Government counsel on the

3. The unreasonableness of such a subpoena, however, turns not on any legal absolutism but on evaluative impression.

hearing of the motion to quash, was for the purpose of "attempting to ascertain whether that (Sachs' tax) case was improperly handled in Washington by reason of political influence, favoritism, or other forms of corruption", and seeking to discover "what other cases [if any] Mr. Schwimmer was involved in and in what transactions he used the same connections and how and when." This attempt at justification did not even so much as claim that there existed indication that Schwimmer had handled other tax cases or transactions, as a basis or opportunity for some other crime, than in the Sachs' matter, to have been even possible.

■ On all these aspects, it seems to us that the excursion desired to be made by the grand jury, through such a varied accumulation, over such an extensive period, as an abstract hunt for possible crime in Schwimmer's legal practice, would dominatingly constitute a general fishing expedition, and that the compelled production of all the files and papers thus would amount in the situation to an unreasonable search and seizure against Schwimmer. We accordingly think that the trial court's denial of the motion to quash the first subpoena was erroneous and must be reversed. This general conclusion makes unnecessary any consideration of the question of violation of attorney-client privilege or other objection raised by Schwimmer as to the production required by this subpoena.

But since the Dean Rubber Manufacturing Co. made production and delivery of all the files and papers en masse, as a compliance also with the second subpoena, without any attempted separation by it of such documents as had application only to the affairs of Sachs, Shu-Stiles, Inc., and Mrs. Taylor, either directly or as a matter of relationship on the part of any person or corporation to those affairs, and since the motion to quash was not made and presented to the Court until the occurrence of this production and delivery on the part of the Dean Rubber Manufacturing Co., our re-

versal as to the first subpoena is entitled to have effect in Schwimmer's favor only as a prevention of any examination being made by the grand jury of such files and records as are beyond the scope of the second subpoena, which safeguard was interlocutorily afforded Schwimmer by our previous stay pending appeal.

■ Schwimmer attempts to argue, in attack upon the second subpoena, that it also, like the first, is too broad to be reasonable, in that it contains no sufficient designation as to kind or character of the matters required to be produced and "is in effect a general warrant for the making of a search of the legal files and records of this movant without any regard to the relevance or materiality and no matter what the nature thereof may be." We think this contention is without merit.

■ Relevance and materiality necessarily are terms of broader content in their use as to a grand jury investigation than in their use as to the evidence of a trial. They must be given practical meaning in relation to the functions which a grand jury is designed to serve and to the realities which are necessary in any expeditious carrying-on of its operations. Thus, a grand jury has no catalog of what books and papers exist and are involved in a situation with which it is attempting to deal, nor will it ordinarily have any basis for knowing what their character or contents immediately are. It can therefore hardly be expected to be able to designate or call for what its exact needs may ultimately turn out to be. And since the path which it is entitled to travel in its search for probable cause has no general limits except those of reasonableness on the entirety of the situation being pursued, it obviously has a right, as against the objection of unreasonable search and seizure, to a fair margin of reach and material in seeking information, not merely direct but also as a matter of possible light on seemingly related aspects whose significance it is seeking to uncover. Some exploration or fishing necessarily is inherent and entitled to exist in all

documentary productions sought by a grand jury.

■ In the present situation, we do not believe that the scope of the second subpoena can be said to have involved an unreasonable margin of reach as to either material, parties or time, in respect to the investigation of Schwimmer's handling of the affairs of Sachs, Shu-Stiles, Inc., and Mrs. Taylor. The required production of an attorney's files of a specific client's affairs, for a reasonably limited period of time, in a grand jury's investigation of incidents involved in the attorney's handling of some of those affairs, does not impress, abstractly and without any demonstration, as constituting one of such unwarranted scope or of such substantial, apparent irrelevancy as to be generally unreasonable. Nor can the call for papers here, extending back to September 1, 1945, be said to represent an unreasonable period of time in the situation involved, in view of the showing on the hearing that the income-tax evasions involved against Sachs and Shu-Stiles, Inc., had been commenced to be investigated in 1948. Also, clearly, the requiring of Schwimmer's files and papers relating to the affairs of Sachs, Shu-Stiles, Inc., and Mrs. Taylor, either directly or as a matter of relationship on the part of any person or corporation thereto, was of sufficient definiteness and limitation to be reasonable in its identification and scope of parties as to whom production was to be made.

This leaves for consideration only the contention that the production required by the second subpoena constituted an unreasonable search and seizure, because of the violation of attorney-client privilege which would be involved in any disclosure of the files and papers. Ancillarily, it further is argued that the appointment made of a Master and the extent of the authority delegated to him constituted in any event an improper judicial protection of the privilege involved, and that the subpoena thus, beyond the question of its general validity, had been allowed by the Court to effect an unreasonable search and seizure from violation of privilege.

■ The attorney-client privilege is one that exists to enable a client to have subjective freedom of mind in committing his affairs to the knowledge of an attorney, whether the matter is one of consultation or of litigation; and, in order that the client's feeling of security may be complete, the protection against disclosure is one that extends both to the communications made by him to the attorney and to the communications made by the attorney to him related to the confidence. 7 Wigmore on Evidence, 3rd ed., §§ 2294, 2306, 2310, 2317, 2320.

■ The privilege thus is one that exists for the benefit of the client and not the attorney. Chirac v. Reinicker, 11 Wheat. 280, 294, 6 L.Ed. 474. But the attorney has the duty, upon any attempt to require him to testify or produce documents within the confidence, to make assertion of the privilege, not merely for the benefit of the client, but also as a matter of professional responsibility in preventing the policy of the law from being violated. "The seal of the law once fixed upon (such a privileged communication) remains forever, [and for every purpose] unless removed by the party in whose favor it is there placed." 58 Am. Jur., Witnesses, § 467.

■ Removal of the privilege, however, requires no particular formality on the part of the client. "The client may waive the protection of the rule. The waiver may be express or implied." Blackburn v. Crawfords, 3 Wall. 175, 194, 18 L.Ed. 186. Assertion of the privilege by an attorney, upon any testimony or production of documents being required of him, makes the question of waiver on the part of the client one for collateral determination by the court. As a collateral question, the court has discretion or latitude in the receiving of proof. It is not bound by the technical rules of evidence under which primary and corollary facts are required to be established. The question with which it is concerned is not whether waiver is capable of es-

tablishment by formal legal game, but whether it in fact exists, on satisfied conviction, from any credible and persuasive elements and implications shown. And such a determination of waiver as a collateral fact will, if it has a rational basis on general probative values of natural experience, be accepted as conclusive on any attempted review.

 .Further, in any assertion of the attorney-client privilege to avoid production of subpoenaed documents, it is to be remembered that existence of the privilege is not a basis for keeping the documents from having to be brought before the court. The privilege is not self-operative against a judicially required production, since the court is entitled to an opportunity to make inspection of any such documents in order to satisfy itself that they are in fact privileged. Brown v. United States, 276 U.S. 134, 144, 48 S. Ct. 288, 72 L.Ed. 500. " * * * the individual citizen may not resolve himself into a court, and himself determine [a question of privilege as to] the contents of books and papers required to be produced." Commonwealth v. Southern Express Co., 160 Ky. 1, 3, 169 S.W. 517, 518, L.R.A.1915B, 913.

 What has been said as to the manner and effect of a trial court's determination of waiver of the attorney-client privilege in a particular situation is a sufficient answer to Schwimmer's attempt here to have us review the question of whether a waiver existed on the part of Shu-Stiles, Inc., and Mrs. Taylor. As to Sachs, it was directly shown from the proceedings of the grand jury, under permission of the Court, that Sachs had stated before the grand jury that he had no objection to the grand jury obtaining and examining any communications which had been involved between him and his attorney or between his attorney and other attorneys. As to Mrs. Taylor, it was shown that she had testified before the grand jury that Schwimmer never had been her attorney. As to Shu-Stiles, Inc., statement was made by Government counsel on the hearing (Schwimmer waived the taking of oath in relation to the statement) that a St. Louis attorney representing both Sachs and Shu-Stiles, Inc., in incidents connected with the grand jury's investigation, had turned over all his own files and records pertaining to the affairs of these two parties and in this position of professional responsibility had declared that both Sachs and Shu-Stiles, Inc. had waived and desired to waive any attorney-client privilege which they might at all have. We think that all of this, in the community of relationship existing among Sachs, Shu-Stiles, Inc., and Mrs. Taylor, and in the touch which all of them manifestly had with what was going on, afforded a sufficient and rational basis for the Court to conclude, with satisfied conviction, that no present privilege could properly be claimed by Schwimmer to exist as to any of them.

As to the propriety of the Court's appointment of a Master and the power conferred upon him, the Master, as we have indicated, was put in a position to turn over to the grand jury everything in Schwimmer's files which he found to be connected with the affairs of Shu-Stiles, Inc., Sachs, and Mrs. Taylor, either directly or as a matter of relationship on the part of any person or corporation thereto, except as he concluded that there had existed a personal attorney-client relationship between any such related person or corporation and Schwimmer, distinct from that involved as to Shu-Stiles, Inc., Sachs, and Mrs. Taylor, and that some particular paper or papers came within the privilege of that separate relationship. Whether a separate attorney-client relationship existed as to any such related person or corporation, and, if so, whether any paper or papers appearing to be connected therewith were privileged, were thus left to the exclusive judgment of the Master, with no provision for any confirmation to be made by the Court, and with no opportunity to Schwimmer to check or make protest to the Court against such result as the Master might reach.

 The appointment of a Master could not be claimed to have been an

improper act in the situation. Beyond the provisions of Rule 53, Federal Rules of Civil Procedure, 28 U.S.C.A., for appointing and making references to Masters, a Federal District Court has "the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential." Ex parte Peterson, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919; Westchester Fire Ins. Co. v. Bringle, 6 Cir., 86 F.2d 262, 263. While reference should be the exception and not the rule in judicial administration, the Court may, in its discretion, make appointment of a Master to assist in any of the incidents of a proceeding before it, whether civil or criminal, so long as there is no infringement upon the right of trial by jury or any prejudice to other substantive right. But since the thing being done by a Master is a judicial incident, it necessarily is subject to such judicial standards as are applicable to any performance of it by the Court itself. And where it is of the nature or consequence of a culminating judicial result, that which the Master has done can only have legal validity through some form of subsequent confirmation or approval on the part of the Court. Cf. 45 Am.Jur., References, § 29 et seq.; Rule 53(e), Federal Rules of Civil Procedure, 28 U.S. C.A.

Here, the Master's determination of whether an attorney-client relationship existed between Schwimmer and any of those covered by the subpoena as "related" persons or corporations, and whether any of Schwimmer's papers were privileged as confidences of such a relationship, was made a matter not merely of final result but of secret result as well, in that no report, either formal or informal, was required to be made to the Court, and no one, either Schwimmer or any client, was afforded the opportunity to check, even with the Master, what determinations had been made. Had the Court itself engaged in a determination of the question of attorney-client relationship and privilege, in respect to the right to turn over files and papers to a

grand jury as against a motion to quash, we do not believe that anyone would contend that such a secrecy of result on the part of the Court as to its determination would be an act of judicial stature and standard. No more could the act of the Master be one, in his substitution for the Court to resolve a judicial question, reach a judicial result, and effect a judicial disposition.

 We accordingly hold that the order denying the motion to quash the second subpoena should be modified to require disclosure to be made to Schwimmer of what papers the Master found to be unprivileged and to permit Schwimmer to have a ruling from the Court on any specific papers which he contends represent confidences of a separate attorney-client relationship on the part of any related person or corporation, as covered by the subpoena. This should be capable of being informally and unburdensomely accomplished.

And its only immediate effect will be to entitle Schwimmer to the return of any such privileged papers as an unreasonable search and seizure. The modification as such can, of course, have no automatic effect upon the validity of the indictment which the grand jury has apparently returned against Schwimmer. It may turn out, contrary to Schwimmer's contention, that there has existed no separate attorney-client relationship as to any such related person or corporation; or that there are no confidential communications in the files and papers applicable to any such possible relationship; or that, if any such privileged communications have been allowed to come before the grand jury, none of them is of such a nature as to be capable of having constituted a part of the foundation for the action taken by the grand jury against Schwimmer. Also, beyond this, we do not intend anything in this opinion to be taken as an implication that, if relevant, privileged papers from Schwimmer's files have been used against him by the grand jury, his indictment is for that reason required to be vitiated.

■ As we have observed, the attorney-client privilege exists for the benefit of the client and not the attorney. We think, however, as our previous expression indicates, that an attorney's obligation to safeguard the privilege of his files and papers, from any attempted invasion of such protected confidences as they contain, entitles him to set up, on any required production of the files and papers by a grand jury for use against him, the violation of privilege which would be involved in any examination of them by the grand jury, as an element of unreasonable search and seizure against him, such as was here done. Such an assertion of unreasonable search and seizure is grounded upon the attorney's ownership and possession and his right not to have those incidents disturbed by any improper search, as a means of enabling him to protect the client's privilege. It thus does not, so far as the privilege itself is concerned, go beyond the bounds of protection to the client. And, as discussed above, it does not prevent the Court itself from making inspection of the documents, to be certain that the privilege exists.

But where the Court has erroneously failed to vindicate the privilege and has allowed confidenced papers to be disclosed to the grand jury for use against the attorney (without any claim of self-incrimination having been made) any attempt by the attorney to use the violation of privilege which has occurred, as a basis for attack upon an indictment returned against him, and so as a matter of personal advantage, presents a different question. That question, however, is not now before us, and it may not even be involved in the present situation, as the proceedings required under our modification of the Court's order on the second subpoena may ultimately establish. In any event, it will be soon enough, and for the trial court, to deal with the question, when and if it is presented.

■ Schwimmer makes the final argument that, under the holding in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct.

385, 393, 91 L.Ed. 451, it was in any event improper to give the grand jury access to any of his working papers, or to what is referred to in the opinion of that case as the " 'work product of the lawyer.' " But the Hickman case is without any application to a grand jury investigation. It deals merely with what scope of discovery has been opened up by the Federal Rules of Civil Procedure, and the effect of its holding is that those Rules can not be said to have been intended to compel the disclosure by a lawyer of his own "work product" in a civil action. Schwimmer's working papers would, of course, be privileged against use in any proceeding, whether criminal or civil, to the extent of any expression made by him therein of the confidences which had passed between him and his client, and as to which there had been no waiver by the client of the privilege.

On the basis of what has been said, the Court's order on the motion to quash the first subpoena is reversed, and the order as to the second subpoena is modified as herein indicated, with remand of the case for proceedings in relation to the modification.