GREGORIO LORENZO GONZÁLEZ, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE AGUADILLA, HON. JOSÉ A. BIANCHI, JUEZ, demandado.

*Número:* O-73-71      *Resuelto:* 14 de noviembre de 1974

SENTENCIA

El 6 de mayo de 1971 el peticionario fue sentenciado a una pena de 10 a 15 años de presidio luego que un jurado lo hallara culpable de haber violado a una joven de poco menos de 14 años de edad. La sentencia fue confirmada por este Tribunal el 11 de diciembre de 1972. El 2 de enero de 1973 el peticionario presentó ante el tribunal sentenciador una moción al amparo de las Reglas 171 y 185 de Procedimiento Criminal, solicitando reducción de la sentencia. Alegó que antes de ser sentenciado no se celebró una vista sobre atenuantes y agravantes; que nunca había sido convicto de delito grave alguno ni de delitos que implicasen depravación moral; que es de oficio chófer, padre de trece hijos, y gozaba de conducta intachable en la comunidad. Solicitó la celebración de una vista para acreditar estos extremos. Recurre contra la resolución que le denegó la vista solicitada y la rebaja de sentencia.

En *Rosa* v. *Tribunal Superior*, 102 D.P.R. 670 (1974), resolvimos que la concesión de una vista después de dictada sentencia, al amparo de la Regla 185(a) de Procedimiento Criminal, es discrecional del tribunal sentenciador. No se nos ha demostrado que al negar la vista en este caso el tribunal de instancia abusara de su discreción y por tanto no se justifica que se devuelvan los autos al tribunal de instancia para la celebración de una vista.

Se anula el auto expedido y se confirma la resolución del Tribunal Superior, Sala de Aguadilla, Hon. José A. Bianchi, Juez, fechada el 15 de enero de 1973 en la causa G-70-148, denegando la vista solicitada y la reducción de la sentencia.

Así lo pronunció y manda el Tribunal y certifica el Secretario.

El Juez Asociado Señor Irizarry Yunqué disiente en voto separado con el cual concurre el Juez Asociado Señor Dávila.

(Fdo.) Angel G. Hermida
*Secretario*

—0—

Voto disidente del Juez Asociado Señor Irizarry Yunqué con el cual concurre el Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 14 de noviembre de 1974

Estoy de acuerdo en que la concesión de una vista en relación con una solicitud de rebaja de sentencia es discrecional ·del tribunal sentenciador. *Rosa* v. *Tribunal Superior*, 102 D.P.R. 670 (1974). Creo, sin embargo, que en el caso que ahora nos ocupa debe brindarse una oportunidad al tribunal recurrido de pasar nuevamente sobre la cuestión de si debe o no acceder a rebajar la sentencia impuesta tomando en consideración los principios que paso a exponer. Aquí se plantea, además de la ·cuestión de rebaja de sentencia, el derecho del acusado a una vista, luego del fallo condenatorio y antes de que se dicte sentencia, sobre circunstancias atenuantes. En el caso ahora ante nos, distinto a *Rosa*, el acusado ha expuesto las circunstancias atenuantes que ofreció probar. No hay manera de saber si el juez sentenciador, de haberlas conocido antes de dictar su sentencia, hubiera variado sus términos.

A mi entender el debido proceso de ley no termina con el pronunciamiento del fallo condenatorio. La imposición de sentencia ·es también parte del proceso. La discreción del tribunal en la determinación del mínimo y del máximo de prisión no debe hacerse descansar en el vacío entre el mínimo y el máximo prescritos por el estatuto penal para el delito de que se trate. El término mínimo durante el cual el convicto deberá estar en prisión y el máximo a que podrá extenderse la privación de su libertad deben depender, dentro de los límites

que fije el estatuto, de las circunstancias que individualicen su caso, en consonancia con el principio rehabilitador que es a mi juicio eje central de la penología. De ahí que si el convicto solicita ser oído sobre circunstancias atenuantes, antes de ser sentenciado, debe ser oído. Salvo en el caso de asesinato en primer grado, en que la pena de reclusión perpetua es mandatoria, no acceder a oirle constituye una violación del debido proceso de ley.

De los hechos que revela el expediente ante nos no surge que el peticionario solicitara ser oído sobre atenuantes. Tampoco surge de ese expediente si el juez sentenciador sabía, al sentenciarle, que nunca había sido convicto de delito grave ni menos grave que implicase depravación moral, ni las demás circunstancias que refiere en su moción. No sabemos por tanto si hizo buen uso de su discreción al imponerle la sentencia de diez a quince años de presidio. Por eso, si no lo oyó antes de dictar sentencia en nada se perjudicaría el Estado y se cumplirían mejor los fines de la justicia si devolviéramos el caso para que el juez sentenciador pase nuevamente sobre la cuestión.

Los planteamientos de este caso requieren, a mi juicio, una expresión de este Tribunal respecto del alcance de la Regla 171 de Procedimiento Criminal y la aplicación de la 185(a) ante las circunstancias factuales que lo distinguen de *Rosa*. A esos efectos me parecen convenientes algunas reflexiones sobre los propósitos de la penología moderna.

Históricamente se han señalado cuatro teorías como justificación de la penología, a saber: (1) el derecho de retribución y venganza de la sociedad, (2) la necesidad de proteger a la sociedad contra el que viola sus leyes restringiéndole físicamente para que no continúe delinquiendo, (3) el efecto disuasivo que el castigo tiene para otros, y (4) la reforma o rehabilitación del delincuente. La primera, que en un principio constituyó el único objetivo de la penología, hace mucho tiempo que fue descartada.

La teoría moderna fue predicada desde Séneca, que decía que la ley perseguía tres propósitos con el castigo del que cometía un crimen: "Para corregir a aquél a quien castiga, o para que su castigo haga de otros mejores hombres, o para que, al quitar de en medio a los malos, los demás puedan vivir sin temor." De esas tres teorías, la reforma o rehabilitación del delincuente se considera hoy día como la razón primaria para la imposición de sanciones. Véase el comentario en 45 Temp. L.Q. 351 (Spring 1972).

Este principio ha sido recogido en los más modernos códigos penales, en leyes especiales y en constituciones estatales. El *Model Penal Code* del American Law Institute, redacción oficial de 1962, en su Artículo Preliminar I señala como principal objetivo de las disposiciones relativas a sentencias "promover la corrección y rehabilitación de los delincuentes." Para abril de 1971 once estados habían revisado sus códigos para conformarlos al *Model Penal Code,* catorce habían completado revisiones encaminadas a ese fin y estaban en proceso de adoptarlas mediante legislación, y dieciocho habían iniciado planes de revisión. Así surge de las vistas sobre la reforma de las leyes penales federales celebradas en 1971 por un subcomité de la Comisión de lo Jurídico del Senado federal, 92do. Congreso, primera sesión. Véase *Discretion in Felony Sentencing,* comentario en 48 Wash. L. Rev. 857 (1973), escolio número 3 a la pág. 858. El mismo principio aparece en las Constituciones de Indiana, Oregón, Illinois, Nueva Hampshire, Texas, Wyoming, Montana y Carolina del Norte. Podríamos hacer paráfrasis de lo en ellas consagrado diciendo que "el objetivo del castigo es reformar y no exterminar seres humanos." Véase el comentario en Temp. L.Q., *supra,* pág. 351.

En Puerto Rico se acaba de adoptar mediante la Ley Núm. 115 de 22 de julio de 1974 un nuevo Código Penal que estará vigente a partir del 22 de enero de 1975, el cual está también basado en la filosofía rehabilitadora. Así lo reconoció

la Comisión de lo Jurídico Penal del Senado al informar favorablemente el proyecto que se convirtió en la citada Ley Núm. 115, haciendo los siguientes pronunciamientos:

"En términos generales, el Proyecto del Senado 753 se propone reformar el obsoleto Código Penal vigente desde el año 1902, el cual adolece de una serie de defectos sustanciales, entre los que merece se destaquen los siguientes:

(a) su concepción de la pena es de carácter estrictamente expiacionista y no rehabilitador;

(b) deja fuera grandes y fecundos cambios en la criminología que han señalado pautas, entre otras, en la terapia del delincuente, desconocidas al momento de la adopción del Código Penal;

(c) .    .    .    .    .    .    .    .

(d) .    .    .    .    .    .    .    .

(e) .    .    .    .    .    .    .    .

(f) impone aún al recluso la realización de trabajos forzosos;

(g) contiene la controversial institución de muerte civil del sentenciado;

(h) .    .    .    .    .    .    .    .

(i) .    .    .    .    .    .    ."

Véase Código Penal de 1974, publicación de Equity Publishing Corporation de agosto de 1974, pág. 1. Este objetivo se recoge en el Art. 40 que, al referirse a la pena de reclusión señala: "Esta se cumplirá de manera que dé al convicto el tratamiento adecuado para su rehabilitación moral y social."

Con la vigencia de este nuevo Código quedarán instrumentados los medios para hacer cumplir la Cláusula 19 del Art. VI de la Constitución, que dispone, en lo aquí pertinente:

"Será política pública del Estado Libre Asociado . . . reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social."

El sistema de libertad a prueba mediante la suspensión de los efectos de sentencias, adoptado mediante la Ley Núm. 259 de 3 de abril de 1946, 34 L.P.R.A. sec. 1026 y

siguientes, enmendado por la Ley Núm. 119 de 22 de julio de 1974; el sistema de sentencias indeterminadas instituido por la Ley Núm. 295 de 10 de abril de 1946, 34 L.P.R.A. sec. 1024, incorporado a las Reglas de Procedimiento Criminal mediante la Núm. 178, y hecho formar parte del nuevo Código Penal en su Art. 58; el sistema de libertad bajo palabra, adoptado por la Ley Núm. 266 de 4 de abril de 1946, continuado por la Ley Núm. 59 de 19 de junio de 1965, 4 L.P.R.A. sec. 641 y siguientes, y ahora reestructurado por la Ley Núm. 118 de 22 de julio de 1974; las leyes creando la Administración de Corrección y la Corporación de Empresas Correccionales de Puerto Rico, Núm. 116 y Núm. 117 de 22 de julio de 1974, respectivamente; y la implantación del requisito de un informe pre-sentencia sobre los antecedentes de familia e historial social del convicto, medidas todas dirigidas hacia la individualización de la persona tanto respecto de la imposición de sentencia como respecto del tratamiento rehabilitador, demuestran cuan arraigado está en nuestra jurisdicción el principio de que la sanción penal tiene como primordial objetivo reformar a la persona que ha violado la Ley y devolverla cuanto antes al seno de la sociedad como un ciudadano útil para sí y para su comunidad.

A tono con estos principios, la penología moderna se pronuncia en contra de mínimos muy altos a menos que se justifiquen. Los *standards* de la American Bar Association relativos a alternativas y procedimientos sobre sentencias disponen:

"La sentencia impuesta en cada caso debe disponer un mínimo bajo de custodia o reclusión consistente con la protección del público, la gravedad del delito y las necesidades rehabilitadoras del acusado." *Standard* 2.2. Véase *Comparative Analysis of Standards and Goals of the National Advisory Commission on Criminal Justice Standards and Goals with Standards for Criminal Justice of the American Bar Association.* Catálogo de la Biblioteca del Congreso número 74-75181, edición de junio de 1974, págs. 396 y siguientes.

De hecho, los *standards* de la American Bar Association recomiendan que por estatuto se señalen máximos pero no mínimos para los delitos y la abolición de las sentencias mandatorias para dar al tribunal sentenciador la más amplia discreción en la imposición de la pena en consonancia con el objetivo rehabilitador. *Standards* 3.1, 3.2 y 2.1 (c) relativos a alternativas y procedimientos sobre sentencias.

Repugna a toda sociedad civilizada el espectáculo de seres humanos confinados tras las rejas de una prisión. Quizás un día se alcance el ideal de buena vida humana de que habla Mortimer J. Adler(1) y puedan abolirse las cárceles y las prisiones. Mientras ese día no llegue no hay otro medio de proteger a la sociedad que aislar a los que desprecian sus leyes, subvierten el orden y perturben su tranquilidad. Pero al hacerlo debe tomarse en cuenta que si hay malvados difíciles de rehabilitar, hay entre los que delinquen personas humanas cuyas vidas se pueden reencauzar por el camino del bien. Si hemos de creer en la función rehabilitadora de la pena y pasar de las ideas a la acción, las sentencias de reclusión, salvo en casos extraordinarios, deben limitar la duración del mínimo a aquel período que, tomando en consideración la gravedad de la ofensa, permita encaminar al convicto hacia su rehabilitación en el más breve plazo posible. Véanse Singer, artículo luego citado publicado en 58 Cornell L. Rev. 51, 88–89; y *Discretion in Felony Sentencing—A Study of Sentencing Factors*, comentario en 48 Wash. L. Rev. 857–889 (Nov. 1973). La Comisión de Derechos Civiles ha dicho:

"Para que la institución de la sentencia indeterminada pueda responder cabalmente al objetivo de propiciar la rehabilitación del delincuente y evitar que permanezca en confinamiento quien presenta posibilidades claras de reforma moral y social, debe

(1) Mortimer J. Adler, A Catechism for Our Times, artículo publicado en *The Great Ideas Today*, publicación de Enciclopaedia Britannica, Inc., 1969.

evitarse, mediante reglamentación adecuada, la fijación desmesurada del mínimo a cumplirse." 1 Der. Civ. 619, n. 46 (1968-CDC-012), 34 L.P.R.A. Ap. II, R. 178, Suplemento para 1974.

Los tribunales de primera instancia vienen obligados por la Regla 178 de Procedimiento Criminal a dictar sentencias indeterminadas y sentencias a prueba en casos apropiados. Al disponer cuál deberá ser el mínimo a cumplirse, deberán tener presente los propósitos de tales medidas. Debe haber suficiente margen de fluctuación entre el mínimo y el máximo de la sentencia indeterminada. *Serrano* v. *Delgado*, 80 D.P.R. 221 (1958); *Sánchez* v. *Angeli*, 80 D.P.R. 154 (1957). El mínimo impuesto debe ser por el más breve período posible de reclusión cónsono con las circunstancias del acusado, la naturaleza del delito y la protección de la sociedad. Entre ese mínimo y el máximo impuesto debe haber suficiente tiempo para dar oportunidad al acusado de demostrar que se ha rehabilitado y permitir que se compruebe su rehabilitación mediante adecuada supervisión.

Vistas dentro de ese marco, veamos cuál debe ser el alcance y aplicación de las Reglas 171 y 185 de las de Procedimiento Criminal. La Regla 171 dice:

"El tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o a la parte contraria, podrá oír, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena."

Este lenguaje, tomado literalmente, parece implicar que el tribunal sentenciador tiene discreción para oír a las partes sobre atenuantes y agravantes. A esta interpretación puede prestarse el uso de la frase "podrá oír". No puede ignorarse, sin embargo, que esa frase es obligada ante el carácter mandatorio de la pena de reclusión perpetua en asesinato en primer grado. A nada conduciría que el juez sentenciador oyera a las partes sobre atenuantes y agravantes si el acusado es convicto de ese delito. En los demás delitos, leída la disposición que nos ocupa tomando en consideración el principio de

individualización y el objetivo rehabilitador de la pena a imponerse, el tribunal no puede negarse a oír, sea al fiscal, sea al acusado, sea a ambos, sobre circunstancias agravantes y atenuantes.

La adopción en esta jurisdicción del requisito de un informe pre-sentencia es un paso de fundamental importancia en consonancia con el principio de individualización de la pena. Es significativo que al instituir este requisito la Asamblea Legislativa ha dispuesto que el informe estará a la disposición de las partes. El Art. 59 del nuevo Código Penal dice:

"La imposición de la pena requerirá un informe pre-sentencia, el cual será mandatorio en los delitos graves y a discreción del Tribunal en los delitos menos graves. Estos informes estarán a disposición de las partes."

La Regla 162.1 de Procedimiento Criminal, adicionada a este ordenamiento procesal por la Ley Núm. 172 de 23 de julio de 1974 y a regir 90 días después de su aprobación, establece el procedimiento para la obtención del informe pre-sentencia. De particular significación es su penúltimo párrafo, donde leemos:

"El Tribunal dará acceso a los informes pre-sentencia a los acusados o peticionarios, a sus abogados y al ministerio fiscal, a los fines de que éstos puedan ser controvertidos mediante la presentación de prueba."

Permitir a las partes, y particularmente al acusado, que tengan acceso al informe está de acuerdo con los más modernos postulados de la penología. De igual manera, el derecho de las partes a ser oídas y ofrecer prueba de agravantes y atenuantes, independientemente del informe pre-sentencia, es favorecido por la moderna doctrina. Véase a este efecto Gray, *Post Trial Discovery: Disclosure of the Presentence Investigation Report*, 4 Toledo L. Rev. 1–24, núm. 1 (1972); Singer, *Sending Men to Prison: Constitutional Aspects of the Burden of Proof and the Doctrine of the Least Drastic Alternative as Applied to Sentencing Determinations*, 58 Cornell

L.Rev. 51 (Nov. 1972); Low, *Reform of the Sentencing Process*, 29 Cambridge L.J. 237 (1971).

En cuanto al derecho a presentar prueba de atenuantes, leemos de un comentario en 81 Harv. L. Rev. 821 (1967–68), en la pág. 842:

"El derecho a presentar prueba de atenuantes debe ser considerado como parte esencial del debido proceso de ley, independientemente de disposiciones estatutarias y de reglas del tribunal. Aquél cuyos intereses han de ser adjudicados tiene usualmente derecho a una vista; este principio debe tener particular fuerza en el procedimiento relativo a la sentencia que tanto afecta al acusado en cuanto a todo su futuro. El Tribunal Supremo ha sostenido que una vista, en el contexto administrativo, 'requiere en su esencia misma que aquél que tiene derecho a ella pueda sostener sus alegaciones mediante argumentos orales, no importa cuan breves y, de ser necesario, mediante prueba, no importa cuan informal.' Esto implica, en cuanto a la sentencia, que si el acusado desea sostener sus alegaciones en favor de la mitigación de la pena, o rebatir lo contenido en el informe presentencia, o refutar las alegaciones del fiscal sobre agravantes, debe poder presentar testigos y pruebas documentales y físicas, y disponer de remedios compulsorios para que tales pruebas aparezcan. Debe además garantizársele tanta liberalidad frente a las restrictivas reglas sobre las pruebas como tiene el funcionario que prepara el informe pre-sentencia para compilar información." (Traducción nuestra.)

Veamos ahora la Regla 185 de Procedimiento Criminal, que dispone en su inciso (a) como sigue:

"(a) Sentencia ilegal; reducción de la sentencia. El tribunal sentenciador podrá corregir una sentencia ilegal en cualquier momento. Asimismo podrá, por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación, o dentro de los sesenta días después de haberse recibido el mandato confirmando la sentencia o desestimando la apelación o de haberse recibido una orden denegando una solicitud de *certiorari.*"

La Regla 185 contempla dos posibilidades. Una, cuando la sentencia es ilegal. Este sería el caso, por ejemplo, de una sentencia por un término en exceso del máximo dispuesto por ley. 2 Wright, *Federal Practice and Procedure*, sec. 582. La segunda posibilidad supone que la sentencia es legal, pero que hay causas que justifican, en bien de la justicia, que se rebaje. Una moción bajo el primer supuesto plantea una cuestión de Derecho que puede presentarse en cualquier momento. *Hill* v. *United States*, 368 U.S. 424 (1962); *United States* v. *López*, 428 F.2d 1135 (2d Cir. 1970), 2 Wright, *op. cit.* supra, sec. 582, nota 23 y sec. 584. Bajo el segundo supuesto la moción invoca hechos y circunstancias particulares del caso y debe presentarse dentro de los plazos que señala la transcrita Regla 185(a).

Conviene señalar que como aquí la moción fue presentada en tiempo, con ello quedó interrumpido el término de sesenta días que bajo las circunstancias de este caso tiene el tribunal para rebajar la sentencia. Interpretando una disposición similar de la Regla 35 federal, de donde procede nuestra Regla 185(a), se ha resuelto que el término es jurisdiccional —*Peterson* v. *United States*, 432 F.2d 545 (8th Cir. 1970); *United States* v. *Lewis*, 392 F.2d 440 (4th Cir. 1968); *United States* v. *Ellenbogen*, 390 F.2d 537 (2d Cir. 1968), *certiorari* denegado 393 U.S. 948—y que no puede ampliarse no importa qué excusa haya para ello. *United States* v. *Rush*, 60 F.R.D. 211 (D.C. Minn. 1973); *Brown* v. *United States*, 287 F. Supp. 442 (D.C. Pa. 1968), citando *United States* v. *Robinson*, 361 U.S. 220, 226 (1960). Empero, hay jurisprudencia que sostiene que el plazo se interrumpe con la presentación de la moción y que no se invalida la decisión del tribunal de rebajar la sentencia porque tal acción se tomara después de transcurrido el plazo. Véase al respecto *Leyvas* v. *United States*, 371 F.2d 714, 719 (9th Cir. 1967), que sostiene que esta es la interpretación más generalizada, citando *Dodge* v. *Bennet*, 335 F.2d 657 (7th Cir. 1964); *United*

*States* v. *Koneski,* 232 F.2d 862 (4th Cir. 1963) ; *Johnson* v. *United States,* 236 F.2d 459, 461 (5th Cir. 1956). Esta posición es también favorecida por Moore, 8A *Moore's Federal Practice,* 2da. edición, sec. 35.02, pág. 35–36, y por Wright. Véase *op. cit.,* supra, tomo 2, sec. 587. Esta interpretación parece más justa. Debe bastar, por tanto con que la moción se presente dentro del plazo correspondiente fijado en la Regla 185 (a) para que el tribunal sentenciador pueda, si así lo estima prudente, rebajar la sentencia.

Las jurisdicciones federales han interpretado que una moción de rebaja de sentencia "es esencialmente una solicitud de clemencia." *United States* v. *Ellenbogen,* supra; *Poole* v. *United States,* 250 F.2d 396, 399, 401 (App. D.C. 1957). Sostienen que va dirigida a la sana discreción del tribunal sentenciador *United States* v. *Krueger,* 454 F.2d 1154 (9th Cir. 1972) ; *United States* v. *Coffer,* 451 F.2d 387 (10th Cir. 1972) ; *United States* v. *Jones,* 444 F.2d 89 (2d Cir. 1971) ; *United States* v. *Hendrickson,* 442 F.2d 360 (3rd Cir. 1971) ; *United States* v. *Sanders,* 438 F.2d 344 (5th Cir. 1971) ; *United States* v. *Dennison,* 437 F.2d 439 (8th Cir. 1971). Véanse, además, 5 Orfield, *Criminal Procedure Under the Federal Rules,* sec. 35:39; 8A *Moore's Federal Practice,* 2da. edición, sec. 35.02; 2 Wright, *Federal Practice and Procedure,* sec. 586. En *Rosa,* supra, aceptamos que es discrecional la concesión de la vista, pero no adoptamos el criterio de que la moción es una solicitud de clemencia. No creo que debamos adoptarlo.

Si la moción bajo la Regla 185 (a) se presenta luego de que el acusado convicto solicitara y obtuviera, bajo la Regla 171, una vista sobre atenuantes, es decir, antes de que fuera sentenciado, estaría justificado el tribunal sentenciador en denegarla de plano. Si no se celebró una vista sobre atenuantes bajo la Regla 171 porque el acusado no la solicitó, renunció a ella y concederla bajo la Regla 185 (a), es decir, después de sentencia, sería discrecional. Si la vista sobre atenuantes

fue solicitada bajo la Regla 171 y fue denegada y el delito de que fue convicto el acusado no es asesinato en primer grado, cometería error el tribunal sentenciador si la denegara nuevamente al serle solicitada bajo la Regla 185(a). Los hechos de este caso no caen bajo ninguna de esas tres circunstancias. No se celebró una vista sobre circunstancias atenuantes antes de ser sentenciado el aquí peticionario. No podríamos decir que renunció a ella por cuanto este Tribunal no le ha reconocido el derecho a que se la concedieran. Bajo tales circunstancias, y considerando los principios aquí enunciados, debería devolverse el caso al tribunal sentenciador para que sea aquél, y no nosotros, quien decida si debe acceder a reducir la sentencia impuesta.