**In re GRAND JURY PROCEEDINGS.**

**Jasper M. BRANCATO et al., Appellees,**

v.

**UNITED STATES of America, Appellant.**

**No. 75–1139.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1975.

Decided July 11, 1975.

Rehearing and Rehearing En Banc Denied Aug. 4, 1975.

Certiorari Denied Jan. 12, 1976. See 96 S.Ct. 778.

---

Gary Cornwell, Special Atty., Dept. of Justice, Kansas City, Mo., for appellant.

Richard M. Shteamer, Kansas City, Mo., for appellee.

Before BRIGHT, Circuit Judge, KIL-KENNY,* Senior Circuit Judge, and WEBSTER, Circuit Judge.

KILKENNY, Circuit Judge.

The United States appeals from a judgment granting appellees' motion to suppress and to return 42 boxes of records produced in response to a federal grand jury subpoena duces tecum.

*Factual Background.*

The records in question consist of registration cards and guest folios relating to the operation of a Ramada Inn from 1968 through 1972. The subpoena was directed to the manager of the Inn and required the production before the grand jury, in a tax-related matter, of all business records of the Inn " * * * within [appellees'] possession, custody or control * * * " pertaining specifically to the income and expenses of the business of the Inn for the years 1968, 1969, 1970, 1971, and 1972. It is undisputed that the Inn was operated by appellees during the years in question and that they were the individual co-owners until they sold to the present owners, who took possession on July 7, 1973. The final agreement for the sale and purchase of the Inn between appellees and the purchaser contained the following provisions pertinent to our inquiry:

\* \* \* \* \* \*

2. *DESCRIPTION OF PROPERTY.* The property being purchased is the land and buildings and other improvements thereon commonly known and designated as Ramada Inn, 5000–5100 East Linwood, Kansas City, Missouri 64128, hereinafter referred to as the 'Property'. The Property includes:

\* \* \* \* \* \*

D. *Complete copies of all customer lists available and business records prepared, accumulated or compiled by Sellers and/or any operating company retained by the Sellers (hereinafter called 'Operating Company') in the management and operation of the Property * * *.* [Emphasis supplied.]

\* \* \* \* \* \*

5. *CLOSING.* \* \* \* Sellers shall execute and deliver to Purchaser the following, which shall be in form and substance satisfactory to counsel for the Purchaser:

\* \* \* \* \* \*

C. Copies of all customer lists and business records, and an assignment of all licenses, rights and permits (held by Sellers which may lawfully be transferred to Purchaser) necessary or appropriate for the operation of the

---

* The Honorable John F. Kilkenny, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation.

Property, all as described in Section 2D hereof * * *.

\* \* \* \* \* \*

The record is clear that at the time of the service of the subpoena on October 17, 1973, the appellees had been out of possession of the property for approximately three and one-half months and had no ownership or possessory interest in the premises, nor any actual possession of the subject records. It is undisputed that Mr. Harris, the Inn manager upon whom the subpoena was served, and the Inn's housekeeper were the only persons who had access to the locked linen closet on the third floor of the Inn in which the boxes of records were stored. Although the evidence on the ownership of the seized records is somewhat equivocal, the language of the contract clearly places ownership in the purchaser. The evidence on actual possession is uncontroverted.

*Discussion.*

The lower court, in granting the motion to suppress, relied principally upon *Schwimmer v. United States,* 232 F.2d 855 (8th Cir. 1956). Our analysis of *Schwimmer* leads us to the conclusion that it is not in point as the facts are clearly distinguishable from those in the instant case. There, a lawyer had placed his office files in storage with the corporation upon which the subpoena duces tecum was served. It was clear in *Schwimmer* that the corporation was a mere custodian, without personal rights in the books and papers as such, while constructive possession and control of them remained in the owner. Here, the corporation upon whom the subpoena was served had an absolute right to possession of, at least, copies, if not the originals, of the documents which were the subjects of the subpoena. The contract between the parties can be interpreted in no other manner. Beyond that, the corporation had the only key to the room in which the records were stored.

Likewise, *United States v. Guterma,* 272 F.2d 344 (2d Cir. 1959), upon which appellees rely, is readily distinguishable. There, the subpoenaed personal records of the taxpayer were stored in a safe within the offices of the corporation for which he served as chairman of the board. Only the taxpayer and an indicted co-defendant knew the combination of the safe, and the corporation had no access whatsoever to its contents. Recognizing the secure nature of the safe, the *Guterma* court emphasized that even if the safe itself were delivered to the grand jury room, it would still be the taxpayer who would have to deliver his own papers by opening the safe.

The *Schwimmer* and *Guterma* cases were placed in proper perspective by the United States Supreme Court in *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In *Couch,* the sole owner of a restaurant had delivered her books and records to an accountant for the purpose of preparing her income tax returns. A subpoena duces tecum was served on her accountant, who then had possession of the documents. The restaurant owner intervened in the subsequent enforcement proceeding initiated by an agent of the Internal Revenue Service to compel production of the instruments pursuant to the summons. While conceding that the taxpayer had full ownership of the records and that the accountant was entrusted with their possession only for the limited purpose of preparing tax returns, the Supreme Court nevertheless affirmed the decisions of the lower courts requiring production of the documents. Since the owner in *Couch* had effectively surrendered possession of the documents to her accountant, the Court held she had no protectable interest in them and could not prevent their production. Even a casual analysis of the facts in *Couch* reveals that the taxpayer therein had a far greater right to possession and control of the documents than do the taxpayers before us.

In resolving the problem, the *Couch* Court put to rest any theory that ownership, in itself, is sufficient to exempt documents from use by the government without the taxpayer's consent. By way

of a footnote, it employed the following pertinent language from *United States v. Cohen,* 388 F.2d 464, 468 (9th Cir. 1967):

> \* \* \* [But] it is possession of papers sought by the government, not ownership, which sets the stage for exercise of the governmental compulsion which it is the purpose of the privilege to prohibit. \* \* \*

Quoted in 409 U.S. at 330 n. 12, 93 S.Ct. at 617. In the same tenor, the *Couch* Court quoted from *Perlman v. United States,* 247. U.S. 7, 15, 38 S.Ct. 417, 62 L.Ed. 950 (1918), as follows:

> But Perlman insists that he owned the exhibits and appears to contend that his ownership exempted them from any use by the Government without his consent. The extent of the insistence is rather elusive of measurement. It seems to be that the owner of property must be considered as having a constructive possession of it wherever it be and in whosesoever hands it be, and it is always, therefore, in a kind of asylum of constitutional privilege. And to be of avail the contention must be pushed to this extreme. It is opposed, however, by all the cited cases. *They, as we have said, make the criterion of immunity not the ownership of property but the "physical or moral compulsion" exerted.* [Emphasis supplied.]

Quoted in 409 U.S. at 332, 333, 93 S.Ct. at 618.

Although the district judge thought otherwise, the fact that the possession of the records by the accountants had stretched over many years was not the controlling factor in the decision. That is made clear by the court's assertion that *actual possession* of the documents bears the most significant relationship to Fifth Amendment protections against governmental compulsions upon the individual accused of crime.

While stating the general rule as above, the Court in *Couch* recognized that situations would arise where constructive possession was so clear or the relinquishment of possession so temporary and insignificant as to leave the personal compulsion on the taxpayer substantially intact. As typical examples of these situations, the Court expressly cites the *Schwimmer* and *Guterma* cases. *Id.* at 333, 334 n. 16, 93 S.Ct. 611.

*In re Horowitz,* 482 F.2d 72 (2d Cir. 1973), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86, firmly supports our view that *Couch* is controlling on these facts. Our factual background is much stronger in support of the government's position than it was in *Horowitz.* Nor do we find anything in *United States v. Kasmir,* 499 F.2d 444 (5th Cir. 1974), *cert. granted,* 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975), to be in conflict with the view that the summons before us should be enforced.

*Conclusion.*

We hold that the principles stated in *Couch v. United States, supra,* control on the record before us and that the judgment of the district court must be reversed.

It is so ordered.