**In re GRAND JURY PROCEEDINGS: SUBPOENAS DUCES TECUM.**

**Larry DANBOM and Western Union, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 86–2442.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1987.

Decided Aug. 20, 1987.

John C. Dods, Kansas City, Mo., for appellants.

Linda L. Sybrant, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

HENLEY, Senior Circuit Judge.

## I. BACKGROUND

On April 16, 1986 the United States Attorney caused two grand jury subpoenas *duces tecum* to be served on employees of appellant Western Union Telegraph Company. The first subpoena requested production of Western Union's Agency Monthly Summary of Activity Report of wire transactions at the Royalle Inn, Kansas City, Missouri for the period January, 1985 through February, 1986. The second subpoena requested production of Western Union's Telegraphic Money Order Applications for amounts of $1,000.00 or more from the Royalle Inn for the period January, 1984 through February, 1986. The Royalle Inn is Western Union's primary wire service agent in the Kansas City area.

On June 6, 1986 Western Union moved to quash the subpoenas on the ground that they called for an unreasonable search and seizure in violation of the fourth amendment. In response the government submitted the affidavit of a special agent with the United States Customs Service. The affiant alleged that sources had revealed to him that drug dealers in Kansas City frequently use Western Union to transmit money in drug deals and that recipients commonly use their true names. Several specific incidents involving the use of Western Union by drug dealers were also alleged. In some instances, it appears that senders used fictitious names. Further, the agent stated a belief that Western Union's services were preferred by drug dealers despite its higher cost because neither the sender nor the recipient has to reveal his true identity or submit proof of identity.

In particular, the agent's affidavit stated that he had learned "from numerous sources that drug dealers are using Western Union to transfer funds from Kansas City to various locations including Florida, California, and out of the country." Further, the affidavit states that the agent had received information from the Kansas City, Missouri, Police Department that its Drug Enforcement Unit had discovered completed Western Union Money Transfer Applications during a search of "dope houses" in the inner city. These houses were apparently operated by Jamaican nationals, and the applications revealed that funds were transmitted to the Miami area and Jamaica, both "well known centers of narcotics trafficking." The funds involved were wired from the Royalle Inn. In addition, the affidavit relates that the special agent received information that five particular individuals were implicated in the use of Western Union to wire funds for drug purchases. Three of the individuals transferred funds every two or three days to Florida or California.

Western Union has not alleged that the production of the documents would be burdensome or unduly costly. The district court [1] declined to quash the subpoenas and issued an order holding Western Union's custodian of the documents in civil contempt. Incarceration of this employee for refusal to comply was stayed pending this appeal. We affirm the district court's order.

## II. DISCUSSION

■ Western Union predicates its objection to the subpoenas *duces tecum* chiefly upon the fourth amendment rights of its

---

1. The Honorable D. Brook Bartlett, United States District Judge, Western District of Missouri.

customers.[2] We have held, however, that Western Union customers have no privacy interest in Western Union records, as they are not the customers' property. *United States v. Gross*, 416 F.2d 1205, 1213 (8th Cir.), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1969); *accord, Newfield v. Ryan*, 91 F.2d 700, 703 (5th Cir.), *cert. denied*, 302 U.S. 729, 58 S.Ct. 54, 82 L.Ed. 563 (1937). That holding is consonant with the Supreme Court's decision in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), which held that bank customers have no property interest or legitimate expectation of privacy in subpoenaed bank records that would give rise to fourth amendment protection.[3] *Id.* at 440–43, 445, 96 S.Ct. at 1622–24, 1625. *See also California Bankers Ass'n v. Schultz*, 416 U.S. 21, 54, 94 S.Ct. 1494, 1513–14, 39 L.Ed.2d 812 (1974) (bank depositors' fourth amendment rights were not invaded by the requirements of the Bank Secrecy Act, 12 U.S.C. § 1829b(d), requiring banks to keep records for purposes of criminal, tax or regulatory investigations or proceedings).

Western Union also asserts, however, that the subpoenas in this case are overbroad. The Supreme Court has made clear that subpoenas for the production of business records are subject to fourth amendment scrutiny for "abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding authority is authorized by law to make and the materials specified are relevant." *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946). The inquiry into the reasonableness of a particular subpoena "cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." *Id.* at 209, 66 S.Ct. at 506. While no precise lines can be drawn, a comparison of the cases in which overbreadth has been found with those in which it has not convinces us that the subpoenas to Western Union cannot be deemed "far too sweeping" to uphold under the fourth amendment. *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). In *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), the Court found unreasonable a subpoena that, had it

> required the production of all the books, papers and documents found in the office of the MacAndrews & Forbes Company, it would scarcely be more universal, or more completely put a stop to the business of that company.... [S]ome necessity should be shown ... to justify an order for the production of such a mass of papers.

*Id.* at 77, 26 S.Ct. at 380.

Similarly, the Court would not uphold the Federal Trade Commission's orders to two tobacco companies to produce letters and contracts in *FTC v. American Tobacco Co.*, 264 U.S. 298, 305, 44 S.Ct. 336, 337, 68 L.Ed. 696 (1924). The Court later explained that the "aggravating circumstance" in that case was "the Commission's claim of 'an unlimited right of access to the respondents' papers ... *relevant or irrelevant*, in the hope that something will turn up.'" *Oklahoma Press Publishing Co.*, 327 U.S. at 207 n. 40, 66 S.Ct. at 505 n. 40 (quoting *FTC*, 264 U.S. at 305, 44 S.Ct. at 337). We refused to uphold a subpoena

---

2. Western Union places some emphasis on the Federal Communications Act, 47 U.S.C. § 605, which requires it to keep records of its customers' transactions confidential. The Act makes an exception for records subpoenaed by a court or other lawful authority. Since the subpoenas in this case were so issued, we have no need to analyze the Act's provisions. Although Western Union claims the subpoenas were issued without lawful authority, it predicates that claim on the fourth amendment. Thus, we need focus only on the provisions of the amendment.

3. Similarly, the Supreme Court has held that no fourth amendment protection attached to business and tax records turned over to an accountant, *Couch v. United States*, 409 U.S. 322, 335–36, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973); and that, since information communicated in confidence to a third person does not implicate a privacy interest, the target of a Securities and Exchange Commission investigation was not entitled to notice of a subpoena to a third party. *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 744, 104 S.Ct. 2720, 2726, 81 L.Ed.2d 615 (1984).

calling for all an attorney's files, records, correspondence "and other documents" for a ten-year period in *Schwimmer v. United States,* 232 F.2d 855, 861–62 (8th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). The Fifth Circuit has found overbroad a subpoena "so unqualified and pervasive in scope that it required [the recipient] to determine at his peril what documents he was required to produce." *In re Grand Jury Proceedings (McCoy),* 601 F.2d 162, 165 (5th Cir.1979). Like cases include *Bank of America National Trust & Savings Ass'n v. Douglas,* 105 F.2d 100, 107 (D.C.Cir.1939) (compliance with SEC subpoena would close the bank); and *New Hampshire Gas & Electric Co. v. Morse,* 42 F.2d 490, 494 (D.N.H.1930) (all contracts and correspondence relating to finances of over seventy affiliated companies sought with no showing of materiality).

■ The compass of the subpoenas issued to Western Union is nowhere near as sweeping as those in the cases cited above. No allegation is made that production of the documents at issue will close the Royalle Inn agency or even significantly impair its day-to-day operations.[4] The type of documents sought is precisely limited to those recording transactions of one thousand dollars or more occurring within a relatively short period of time. Only a single office is involved. The information sought is material to the grand jury's investigation of drug trafficking, which may involve wire transfers of funds to pay for drugs. The grand jury's proceedings are entitled to a presumption of regularity, and one challenging a grand jury subpoena has the burden of showing irregularity. *Universal Manufacturing Co. v. United States,* 508 F.2d 684, 685 (8th Cir.1975). Western Union has not met that burden; subpoenas far less particular have been upheld by the courts. *See e.g., Brown v. United States,* 276 U.S. 134, 138, 143, 48 S.Ct. 288, 288, 290, 72 L.Ed. 500 (1928) (copies of all correspondence between association and its predecessor regarding case

goods for a two and one-half year period); *Wheeler v. United States,* 226 U.S. 478, 482–83, 489–90, 33 S.Ct. 158, 159, 162, 57 L.Ed. 309 (1913) (all cash books, ledgers and journals; and correspondence sent during a fifteen-month period); *Matter of Berry,* 521 F.2d 179, 183 (10th Cir.), *cert. denied,* 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975) (law firm's financial records covering a five-year period).

Western Union's reliance on *In re Faltico,* 561 F.2d 109 (8th Cir.1977), is misplaced. In that case we required the government to show a "compelling state interest in the subject matter of the investigation and a sufficient nexus between the information sought and the subject matter of the investigation" in order to overcome a first amendment challenge to a grand jury subpoena *duces tecum. Id.* at 111. In this case, no first amendment issue has been raised.

Western Union argues that the custom agent's affidavit submitted by the government in opposition to the motion to quash the subpoena was not based on the agent's personal knowledge, that it was based on information obtained subsequent to the subpoena's issuance, and that no evidence was adduced to show when the agent obtained knowledge that drug transactions involving wire transfers took place. These arguments are unavailing, because the government need not show that it has reliable information before a grand jury may investigate.

> Once a grand jury is properly called together, it is its duty to seek and examine all clues before it fulfills its obligation. This includes calling witnesses believed to possess information based on rumor, tips, and prosecutorial suggestion. [*United States v. Dionisio,* 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973); *Branzburg v. Hayes,* 408 U.S. 665, 701, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972)]. The reliability of such rumor, tips, or suggestions is not relevant.

*United States v. Doe,* 541 F.2d 490, 493 (5th Cir.1976).

---

4. It is, of course, not unlikely that, at least for a time, publicity given to the production proceed-

ings may result in some reluctance of innocent persons to transmit funds via Western Union.

Western Union's overbreadth argument is based on its fear that the subpoena may make available to the grand jury records involving hundreds of innocent people. But the fourth amendment does not necessarily prohibit the grand jury from engaging in a "dragnet" operation. *See Dionisio,* 410 U.S. at 11–13, 93 S.Ct. at 770–71 ("It does not follow that each witness may resist a subpoena on the ground that too many witnesses have been called." *Id.* at 13, 93 S.Ct. at 771).

We do see some features that distinguish this case from *Dionisio,* however. In *Dionisio* the grand jury called some twenty individuals to give voice exemplars. Presumably those witnesses shared some fairly distinctive characteristics which called them to the grand jury's attention. Here, the government seeks access to records relating to possibly hundreds of innocent financial transactions by parties whose only link to the illegal drug trade is that they used a perfectly legal medium to conduct legitimate business or personal affairs. Nevertheless, in the absence of some limiting principle by the Supreme Court in this area, we consider ourselves bound by *Dionisio* and *Miller* to reject Western Union's fourth amendment challenge to the subpoenas.

■ We note, however, that Western Union challenged the subpoenas only under the Constitution and Federal Communications Act, and that the district court's decision appears to have rested primarily on those bases. We wish to make clear that we are upholding the subpoenas only as against the fourth amendment and Federal Communications Act challenges. That is not to say that the trial court, on proper motion, may not consider limiting the scope of the subpoenas under Fed.R.Crim.P. 17(c). Rule 17(c) gives the court authority to quash or modify subpoenas in addition to that provided by the fourth amendment when enforcement would be unreasonable or oppressive. *In re Grand Jury Subpoenas Served February 27, 1984,* 599 F.Supp. 1006, 1018 (E.D.Wash.1984); *Application of Radio Corp. of America,* 13 F.R.D. 167, 171 (S.D.N.Y.1952); 8 J. Moore, *Moore's*

*Federal Practice,* ¶ 17.11 at 17–35 (1987). While Rule 17(c) provided the procedural vehicle for Western Union's motion to quash, the rule was not argued by the parties or expressly considered by the court as an independent basis for decision. Thus, our holding does not bar the district court from limiting the subpoenas to matters having a greater degree of general relevance to the subject matter of the investigation.

It is true that this court stated in *Schwimmer* that a grand jury has a right to

a fair margin of reach and material in seeking information, not merely direct but also as a matter of possible light on seemingly related aspects whose significance it is seeking to uncover. Some exploration or fishing necessarily is inherent and entitled to exist in all documentary productions sought by a grand jury.

232 F.2d at 862–63. Nevertheless, the rationale for the grand jury's ability to fish is explained in large part by the court's reasoning that

a grand jury has no catalog of what books and papers exist and are involved in a situation with which it is attempting to deal, nor will it ordinarily have any basis for knowing what their character or contents immediately are. It can therefore hardly be expected to be able to designate or call for what its exact needs may ultimately turn out to be.

*Id.* at 862. That is not entirely true in this case, however. The government does know the "character and contents" of the information it seeks: records of wire transfers by numerous individuals to various points around the country. The district court may therefore wish to consider the extent to which the government would be able to identify in advance those patterns or characteristics that would raise suspicion. These might include wire transfers to or from individual suspects, transfers to certain locales known to be sources of high volumes of illegal drugs, or other particular patterns designed to focus on illegal

activity without taking in an unnecessary amount of irrelevant material.

■ Such an inquiry is appropriate to protect against unduly encroaching upon the expectations of innocent customers that their financial records will be kept confidential. While those expectations do not rise to the level of a constitutional right, they are recognized by the common law. *See* Rogovin, *Privacy of Financial Records,* 1986 Ann.Surv. of Am.L. 587, 594–97. We caution that the common law right does not in any way restrict the grand jury's access to records for which the government can make a minimal showing of general relevance. But the district court may consider the policy concerns evidenced by the common law in determining whether the subpoena takes in too much irrelevant material to withstand a challenge to the subpoena's reasonableness under Rule 17(c). And, although economic hardship alone is insufficient to justify restricting the grand jury's probe, *Blair v. United States,* 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919), the district court may consider evidence of potentially adverse effects on Western Union's business should it be compelled to produce an overabundance of irrelevant data concerning its customers' transactions.

## III. CONCLUSION

Because the subpoenas in this case do not violate either the privacy or the overbreadth facets of the fourth amendment, we find no error in the district court's decision not to quash the subpoenas, and the district court's order is therefore affirmed. As noted above, however, our decision does not bar further proceedings for consideration of Western Union's claims, if any, pursuant to Rule 17(c).